*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 22, 2021

Plaintiff-Appellee,

v

No. 351288
Cass Circuit Court
LC No. 19-010041-FC

ERIC DEMETRIUS HOUSTON,

Defendant-Appellant.

Before: MURRAY, C.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of conspiracy to commit armed robbery, MCL 750.529; armed robbery, MCL 750.529; conspiracy to commit carjacking, MCL 750.157a; carjacking, MCL 750.529a; and four counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a second habitual offender, MCL 769.10, to 11 years and three months to 30 years' imprisonment for conspiracy to commit armed robbery, armed robbery, conspiracy to commit carjacking, and carjacking, and to two years' imprisonment for each count of felony-firearm. We affirm.

## I. STATEMENT OF FACTS

This case arises from a drug deal turned shooting that took place on January 21, 2019. Defendant got into a stolen black Lexus SUV near his home in South Bend, Indiana, with Jill Brockaway, the driver, Antwan Byrd, the front passenger, Cary Thomas, in the second-row seating, and one or two other unidentified individuals. Defendant had asked for a ride to a party. They drove to Dowagiac, Michigan, stopped at a Shell gas station, and then met the victim, James Smith, at his place of employment, Ameriwood. Smith had been contacted a few days prior by someone he did not know on Snapchat[1] to purchase marijuana that Smith had grown.[2] Smith was

---

[1] Snapchat is a cell phone application in which messages, pictures, and videos are sent, and immediately deleted after being opened by the receiver.

[2] Smith had a medical marijuana card, grew a small volume, and was illegally making this sale.

going to sell four ounces of marijuana for $500. He drove his girlfriend's silver Hyundai Elantra to work that day.

The black SUV followed the Hyundai into the employee parking lot and parked behind Smith. Byrd exited the front passenger seat of the SUV and got into the front passenger seat of the Hyundai with Smith. Byrd asked Smith to give him the marijuana for free, and Smith refused. Then Byrd put a gun to Smith's head, and Smith said that Byrd could take the marijuana and the Hyundai because Smith had no money. Smith was sitting on his own firearm at the time.

Defendant and another occupant of the SUV exited the SUV and went to the driver's side of the Hyundai.[3] Byrd reached over Smith and unlocked the driver's side door; defendant opened it from the outside. Defendant and Smith wrestled over control of Smith's gun, and Smith got out of the car. Smith took two steps back, and was shot four times by Byrd—in his right forearm, his right thigh, and twice in his left thigh. Byrd drove the Hyundai away, defendant and the other male went back to the SUV, and Brockaway drove the SUV away. The Ameriwood on-duty supervisor called 911, and Smith was taken to the hospital by ambulance. At the hospital, Smith initially told Detective Jason Rutkowske that it was a random carjacking, and he had no idea what was going on. The silver Hyundai was found two to three miles from Ameriwood abandoned on the side of the road. Police found marijuana inside the vehicle, weighing 20.96 grams, and a bullet hole in the driver's side door.

The morning after the shooting, defendant contacted Byrd because he needed a ride. Byrd and Brockaway picked him up in the black SUV. When police started following them, Brockaway jumped out of the vehicle, and Byrd got into the driver's seat. The SUV was involved in a high-speed chase with the Nappanee Police Department in Indiana, and crashed into a field. Defendant and Byrd ran from the vehicle, and then surrendered to police.[4] Dowagiac police were contacted by the Indiana State Troopers, and went to Nappanee to interview defendant and Brockaway. Defendant and Brockaway were both wearing the same clothing they were seen wearing in surveillance footage taken from the Shell gas station and Ameriwood on the night of the shooting. The next day, Rutkowske interviewed Smith again, who admitted that it was a drug deal gone wrong.

Defendant was charged with Count I: conspiracy to commit armed robbery; Count II: armed robbery; Count III: conspiracy to commit carjacking; Count IV: carjacking; Count V: conspiracy to commit unarmed robbery, MCL 750.157a; Count VI: unarmed robbery, MCL 750.530; and Counts VII to X: felony-firearm corresponding to Counts I through IV. After a four-day jury trial, defendant was convicted of all 10 counts. However, the court entered an order vacating Count V, conspiracy to commit unarmed robbery, and Count VI, unarmed robbery,

---

[3] Defendant testified that he approached the driver's side of the Hyundai because he wanted to see the quality of the marijuana for sale.

[4] The owner of the black Lexus SUV learned that it went missing while it was getting serviced at the dealership in Indiana.

because they were lesser-included offenses of armed robbery "which must be vacated in order to avoid double jeopardy violations." Defendant was sentenced on the remaining eight counts.

## II. DEFENDANT'S BRIEF ON APPEAL

Defendant argues that all of his convictions and sentences should be vacated because the jury rendered inconsistent verdicts by finding defendant guilty of both armed and unarmed robbery.

To properly preserve most issues for appeal, a party must object in the trial court. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). Defendant did not object to the jury's verdicts in the trial court; this argument was raised for the first time in defendant's brief on appeal. Therefore, it is unpreserved, *id*., and reviewed for plain error affecting substantial rights, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant must demonstrate that an error occurred, the error was plain, and the plain error affected his substantial rights. *Id*. at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

Verdicts are considered "inconsistent" when the verdicts "cannot rationally be reconciled." *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995) (quotation marks and citation omitted). Inconsistent verdicts within a single jury trial are permissible, and do not require reversal absent a showing of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises. *Putman*, 309 Mich App at 251. The burden is on the defendant to provide evidence of juror confusion, misunderstood instructions, or impermissible compromise. *Id*. "[V]erdicts cannot be upset by speculation or inquiry into such matters." *People v Wilson*, 496 Mich 91, 100; 852 NW2d 134 (2014), abrogated on other grounds by *Bravo-Fernandez v United States*, ___ US ___; 137 S Ct 352; 196 L Ed 2d 242 (2016) (quotation marks and citation omitted). The defendant may not merely rely on the alleged inconsistency itself to support such an argument, and a proper verdict form and understandable instructions will not support a claim of error. *People v McKinley*, 168 Mich App 496, 510-511; 425 NW2d 460 (1988). "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Putman*, 309 Mich App at 251 (quotation marks and citation omitted).

Because juries may reach inconsistent verdicts, defendant is not entitled to relief. Moreover, the jury's verdicts were not inherently inconsistent. The jury could have convicted defendant of armed robbery as an aider and abettor,[5] while convicting defendant of unarmed robbery as a principal.

Nor has defendant met his burden to establish juror confusion. *Id*. When the jury was polled after delivering its verdict, juror Jessica Myers answered as follows:

---

[5] A defendant who does not directly commit the armed robbery, but who "procures, counsels, aids, or abets" in the commission of the armed robbery may be convicted as if the defendant actually committed the offense. MCL 767.39.

*The Court*:  Juror #5, Jessica Myers, you heard the verdicts that were read?

*Ms. Myers*:  Yes.

*The Court*:  And were those and are those your verdicts?

*Ms. Myers*:  Based on the facts; yes, sir.

Contrary to defendant's argument on appeal, this exchange does not establish juror confusion.

Nor do the remaining assertions.  Specifically, at sentencing, defense counsel stated that when the verdict was read, Myers, a young female, was crying, and when polled, her response was halted.  Then she said her answer was yes, "[b]ased on the facts."  Defense counsel later asked her why she was crying, and Myers said it was irrelevant to the trial.  However, defendant asserted that he met the boyfriend of Myers in jail, who said that Myers came home from defendant's trial and cried for days because she felt pushed, bullied, and forced to convict defendant.  Defense counsel requested that the sheriff's deputy interview Myers and her boyfriend.  The trial court denied defense counsel's motion to adjourn sentencing, as well as the request for further inquiry into the juror issue.  This, too, does not establish juror confusion, particularly because Myers told defense counsel that she was crying during the verdicts because of something irrelevant to the trial.

Regardless, defendant has not established a plain error affecting his substantial rights because he cannot establish prejudice.  *Putman*, 309 Mich App at 243.  After the jury delivered its verdicts, the trial court entered an order vacating the convictions of conspiracy to commit unarmed robbery and unarmed robbery.  Therefore, defendant suffered no prejudice as a result of the jury verdicts of guilty for both armed robbery and unarmed robbery because the unarmed robbery conviction was subsequently vacated.  *Id*.  Defendant is not entitled to any relief on appeal.

III.  DEFENDANT'S STANDARD 4 BRIEF

Defendant filed a "Standard 4" brief under Administrative Order 2004-6.  Defendant makes several incomprehensible arguments, raised for the first time on appeal, and provides no statement of the issues presented.  Absent unusual circumstances, this Court will not go to extreme efforts to decipher an incomprehensible or poorly explained argument and craft a better argument on behalf of a party.  *People v Cameron*, 319 Mich App 215, 232; 900 NW2d 658 (2017); *People v Harlan*, 258 Mich App 137, 140; 669 NW2d 872 (2003).  Criminal defendants who appear *in propria persona* are held to "a less stringent standard" than formal pleadings drafted by lawyers.  *People v Herrera*, 204 Mich App 333, 339; 514 NW2d 543 (1994).  However, such defendants remain obligated to provide support for their claims and an argument that is at least intelligible.  *Estelle v Gamble*, 429 US 97, 106; 97 S Ct 285; 50 L Ed 2d 251 (1976).  Nonetheless, vague or incomprehensible arguments that are not analyzed in any meaningful way are properly deemed abandoned.  *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004).

For instance, defendant provides the statute for assault with intent to steal and rob, MCL 750.88, which he was not charged with or convicted of.  Defendant seemingly argues that the trial court violated the principle of double jeopardy when it vacated his convictions of unarmed robbery, but "affirmed" his convictions of "extortion and conspiracy to commit extortion."  Yet defendant was not charged with or convicted of extortion.  These arguments are therefore irrelevant.

-4-

Defendant makes no comprehensible argument regarding felony-firearm, carjacking, or armed robbery, but rather, merely recites their elements. Thus, all of these arguments are effectively abandoned. *Id*.

Defendant argues that his constitutional right to a speedy trial and the 180-day rule were both violated because he was charged on January 21, 2019, and at a hearing on July 22, 2019, which was over 180 days later, defense counsel unsuccessfully argued that defendant should be released. Although defendant is referring to a hearing held that day on defendant's unsuccessful motion to reduce bond, defendant again provides no citations to the statute, court rule, or caselaw pertaining to the 180-day rule, and makes no real argument, and thus he has failed to properly brief the issue on appeal, constituting an abandonment. *People v McGraw*, 484 Mich 120, 131 n 36; 771 NW2d 655 (2009).

Defendant seemingly makes an argument that the evidence was insufficient to convict him of conspiracy to commit armed robbery because he did not know about the robbery before it took place, he did not agree to it, he was not armed, and he did not receive anything from Smith. Again, defendant provides no citations to statute, caselaw, or the lower court record, and this issue is abandoned. *Id*.

Over half of defendant's Standard 4 brief consists of citations to the trial transcripts, and assertions by defendant to counter what was said on the record. None of which contain any citations to statute or caselaw, or any comprehensible legal argument that pertains to the initial "argument" section. It is not up to this Court to decipher or construct legal arguments on defendant's behalf. *Cameron*, 319 Mich App at 232; *Harlan*, 258 Mich App at 140. Defendant testified at trial, and many of his assertions in his Standard 4 brief match his testimony, or attack the credibility of the victim, Smith, for illegally dealing drugs and lying to the police. It was up to the jury to weigh the evidence and gauge the credibility of the witnesses, which we will not interfere with on appeal. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Anica Letica